## FISK v. CATHCART.

1. ASSIGNMENT FOR BENEFIT OF CREDITORS — QUALIFIED TRANSFER OF STOCK ASSIGNED.— P., being insolvent, assigned to C., for the benefit of himself and certain other preferred creditors, a stock of goods, retaining a right to the surplus proceeds, if any, and also to a redelivery of the property remaining unsold, upon certain other conditions. C. transferred the goods by bill of sale to F., F. agreeing in the contract to "settle with the said P. or his assignee for all claims or interest he may have in said business." *Held*, in a suit by the general assignee of P., that F.'s guaranty amounted simply to a promise that he would take C.'s place and settle with P., or his assignee, in accordance with the original agreement between C. and P. *Held further*, that as between C. and himself, F.'s guaranty did not cover damages arising through a cancellation of the original transfer between P. and C. on the ground of a mutual purpose in that transfer to defraud the creditors of P.

2. LEGAL RELATIONS OF ASSIGNEE AND PURCHASER AS TO THE CREDITORS.— *Held further*, that F. was not bound to defend a suit brought by P.'s creditors against C. on the ground of the fraud in the transfer from P. to C. above mentioned. Also, that notice to F. of such a suit would not be notice of a suit to recover from C. the balance received by him from the goods after payment of himself and the creditors preferred in the transfer to him.

3. LIABILITIES AND DEFENSES OF ASSIGNEE AND PURCHASER RESPECTIVELY.— Therefore, where suit was brought as aforesaid upon the ground of fraud, but after trial and before judgment, by agreement of the parties, the issue was changed and judgment rendered against C. for the balance upon sale of the assigned property, F., in a suit by C. to recover the amount of such judgment, is entitled to assert such defenses as he might have pleaded if a party to the original suit upon the new ground of recovery, the change having been made without his knowledge or consent.

### *Appeal from Superior Court of Denver.*

ON the 24th of May, 1883, Edgar D. Parker, being insolvent, transferred, by bill of sale, to appellee Cathcart a certain stock of goods in the city of Pueblo. This transfer was absolute on its face and the alleged consideration was $15,000. Cathcart immediately took possession and proceeded to dispose of the goods in the ordinary course of trade. The real transaction, however, instead of being an

absolute sale, appears, by virtue of a contemporaneous written agreement, to have been in effect an assignment to secure certain preferred creditors, among whom was Cathcart himself.

On the 20th of October, 1883, about five months subsequent to the foregoing transaction, Cathcart sold the goods in question to appellant Fisk and one Hughes. Fisk and Hughes bought the interest of Cathcart outright, and paid about $12,000 therefor; they took subject to the rights of Parker, and covenanted to settle with him or his assignee for his reserved interest in the property.

Prior to the execution of the last-named instrument, Parker made an assignment to one Alexander for the benefit of all his creditors, conveying, in general terms, all property of every kind belonging to him. Of this assignment, as well as of the fact of Parker's insolvency at the date of both of these transactions, Cathcart, Fisk and Hughes had notice.

On the 24th of October, 1884, Alexander began a suit against Cathcart on behalf of Parker's creditors to recover the full value of the stock of goods in question on the ground of fraud in the original transfer to Cathcart. At the same time he instituted a separate suit against Fisk and Hughes in connection with the same matter, averring notice by them of the alleged fraud at the date of their purchase. The latter suit, being resisted by Fisk, was ultimately dismissed. The former suit was defended by Cathcart, but plaintiff secured judgment against him for $5,500.

On the 29th of July, 1886, the present suit was begun by Cathcart against Fisk and Hughes to recover the said $5,500 which he had previously paid Alexander in pursuance of the judgment mentioned. Hughes not being served with process, Fisk alone answered. It is unnecessary to here state the averments of the pleadings, as they sufficiently appear in the opinion. Cathcart recovered a judgment against Fisk for $7,491.57, being the amount paid Alexander, with interest. To review that judgment this appeal was taken.

Messrs. ROGERS & SHAFROTH, for appellant.

Mr. J. L. JEROME and Mr. V. D. MARKHAM, for appellee.

CHIEF JUSTICE HELM delivered the opinion of the court.

The rights of the parties in the present case depend upon the construction we shall give the following extract from the contract made by Cathcart with Fisk and Hughes upon the sale to them of the stock of goods in question: "The said second parties agree, in the event of the said purchase being made by them, that they will settle with the said E. D. Parker, or his assignee, for all claims or interest he may have in said business." But this provision must be construed in connection with the agreement to which it undoubtedly refers, viz., the writing between Parker and Cathcart made at the time Cathcart obtained control of the goods sold by him to Fisk and Hughes. This writing shows that the transaction between Parker and Cathcart, though accompanied by a bill of sale, was in fact a sort of pledge conditioned substantially as follows: Cathcart assumed and agreed to pay, when due, certain debts owed by Parker, including one to himself, aggregating about $12,000; he was to take possession of the property and carry on the business as if it were his own, and out of the sales settle the debts in question, or reimburse himself if they were otherwise paid by him. But Parker retained the privilege of paying these debts himself, in which event Cathcart was to restore the property and account for the proceeds from the sales, less salary and expenses. Or if Cathcart paid the debts from sales, he was to return to Parker the business, together with any goods remaining, or if all were sold, the surplus proceeds, less expenses and the cost of new purchases. Provided, that if, at the expiration of a year from the date of the transaction, the secured debts were not paid, either by Parker or by moneys received for goods, the bill of sale became absolute.

In the negotiations between Fisk and Cathcart, the above

agreement between Parker and Cathcart was undoubtedly regarded as *bona fide*. The contract by which Fisk and Hughes became owners of the goods was made upon that basis. Fisk's guaranty amounted simply to a promise that he would take Cathcart's place and settle with Parker or his assignee in accordance with the agreement with Parker. It is difficult to conceive that the thought ever entered the mind of either contracting party that Fisk was giving an undertaking to indemnify Cachcart for a fraud on his part in the original transfer from Parker to him. To say that Fisk agreed to pay Cathcart upwards of $12,000 in land and money for a stock of goods held by Cathcart under a certain contract with Parker, and at the same time agreed to pay Cathcart in addition thereto the full value of the goods in case Parker's creditors recovered such value from Cathcart on the ground of a mutual fraud between Cathcart and Parker in making this contract, would be a strained and unnatural construction of the language employed by the contracting parties, besides imputing to Fisk a most extraordinary indifference to his own financial interests.

It follows from the foregoing that the original complaint in the suit by Alexander against Cathcart for the benefit of Parker's creditors did not refer to a matter in connection with which Fisk was responsible to Cathcart. This complaint contained two counts or alleged causes of action. Both of these counts were predicated upon a transfer by Parker, who was insolvent, of his property in fraud of the rights of all his creditors save those mentioned in the transfer. The difference between the two counts being that one pleaded a constructive fraud through the supposed invasion of the statute then in force relating to assignments for the benefit of creditors; the other, an actual fraud through the assignment upon a fictitious consideration of the property, and the subsequent retention of possession by the assignor.

Neither Fisk nor Hughes was made a party to that suit. But Fisk had notice of its pendency *as brought*. A copy of

the summons was given him by Cathcart; he conferred with Cathcart during its progress, and testified at the trial. These facts do not, however, in our judgment, establish Fisk's liability in the present case. Had that suit been prosecuted to final determination upon the original complaint, and had Alexander recovered a judgment against Cathcart for the full value of the goods on the ground of a fraudulent transfer, Fisk would clearly not have been indebted to Cathcart for the entire amount of such recovery.

It is asserted, however, that Fisk is liable over to Cathcart under his guaranty, because the judgment in that suit, when finally rendered, was for the balance in money due Parker (all the property having been sold by Cathcart) by virtue of his agreement with Cathcart. Fisk's undertaking may have covered such an indemnity. For, as above stated, he agreed, in effect, to carry out Cathcart's contract with Parker.

But by reference thereto it will be seen that the complaint upon which the action against Cathcart was tried, under which the evidence of Fisk was given, and of which he had notice, attempted to state causes of action predicated upon the ground of fraud, to set aside and cancel the agreement between Parker and Cathcart, and to recover from Cathcart the entire value of the property in question. By stipulation, however, of Cathcart's counsel with Alexander's counsel, after the cause was fully tried and ripe for judgment, and without notice to Fisk, that complaint was amended so as to transform the proceeding from a suit to cancel the contract, into an action predicated upon the contract; from a suit to recover the entire value of the property on the ground of fraud, into an action to recover a surplus of proceeds therefrom after payment of the secured debts; from a suit which Parker himself could not prosecute, and which was only available to his creditors or their representative, into an action that lay in favor of Parker as well as his creditors; from a suit that neither Fisk nor Cathcart can fairly be regarded as contemplating when

they executed their agreement, into an action which may be treated as within the scope of that agreement.

Were we to concede that as between Cathcart and the creditors of Parker the change made in the complaint after trial and before judgment was a legitimate amendment of the cause of action originally pleaded, the fact would still remain that this change substituted a liability, within the purview of Fisk's contract with Cathcart, for one that, at least so far as Cathcart is concerned, was not covered thereby. As already suggested, the decisive question is: Did Fisk agree to indemnify Cathcart against liability to Parker's creditors arising out of the invalidity of Cathcart's transaction with Parker, because of the mutual fraud of Cathcart and Parker in that transaction? If he did not, his liability to Cathcart in this action should not be treated as *res judicata* by virtue of the judgment rendered in the suit against Cathcart.

It is unnecessary to speculate as to what would have been the result had Fisk received notice of the contemplated amendment of the complaint, and been favored with an opportunity to object or to assert his defenses, if any he had, even at the eleventh hour. It is sufficient to say that no such notice and opportunity were given. Nor are we embarrassed by a consideration of any possible right or equity of Parker's creditors against Fisk because of his supposed privity with Cathcart. Those creditors have been fully satisfied, and we have now only to deal with the rights of Fisk and Cathcart as between themselves.

We think Fisk was entitled to be heard in the present action upon the question of his *bona fide* compliance with the obligation taken upon himself by the indemnity provision in his contract with Cathcart. And we further believe that he should not be estopped from pleading a subsequent contract, if any there were, with Cathcart, changing or modifying such obligation.

It follows that the judgment now under consideration must be reversed.

*Reversed.*